
CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JAN 09 2018

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| DYLAN L. TYREE, | ) | |
| | ) | Civil Action No. 7:17CV00328 |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM OPINION** |
| v. | ) | |
| | ) | Hon. Glen E. Conrad |
| GCA SERVICES GROUP, INC. | ) | Senior United States District Judge |
| | ) | |
| Defendants. | ) | |

Dylan L. Tyree, proceeding pro se, filed this action against his former employer, GCA Services Group, Inc. ("GCA"). Tyree's amended complaint asserts claims of discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to 2000e-17, and related claims under state law. GCA has moved to dismiss the amended complaint, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. For the following reasons, the motion will be granted.

## Background

The following facts, taken from Tyree's amended complaint, are accepted as true for purposes of the defendants' motion to dismiss. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.").

GCA is a corporation based in Ohio that provides janitorial services in a variety of sectors, including school systems. Tyree, an African-American resident of Roanoke, Virginia, began working for GCA in January of 2014. At the time of his initial interview, Tyree was promised the opportunity to quickly advance in the company and earn $13.00 per hour within three months.

Approximately two years later, Tyree's pay increased to $18.00 per hour after he agreed to temporarily relocate from Roanoke to Chesterfield, Virginia. Tyree alleges that the company offered to make him an account manager, or transfer him to Florida, if he was able to succeed in improving the cleanliness of a particular school. Although Tyree achieved the desired goal, he was not offered a new position with GCA.

Tyree alleges that he was "overworked" while working in Chesterfield, and that he "continued to be overworked after returning to the Roanoke area." Id. at 15. Tyree indicates that his employment conditions were problematic and stressful, because of the lack of staff, inexperienced workers, language barriers, disgruntled workers, and wear and tear on his vehicle. His efforts to resolve these issues were unsuccessful.

While working in Chesterfield, Tyree stayed in a hotel room at GCA's expense. However, GCA occasionally failed to pay the hotel bill. As a result, Tyree was "put out of the Hampton Inn" and forced to move to another hotel that was "filthy." Id. at 17.

Tyree claims that he "faced retaliation because he was being paid more than some of the employees who had worked for the company for several years." Id. In particular, Tyree alleges that he was given a "more burdensome work schedule, with an increase in his workload, while work-related assistance decreased." Id. at 17-18. Tyree alleges that the "excessive, strenuous and constant exertion of physical activity while working with GCA" caused him to experience pain in the groin area, and that he continues to deal with the pain on a daily basis. Id. at 18.

When Tyree relocated back to Roanoke, GCA arranged for him to stay in a motel because he no longer had an apartment there. Tyree's vehicle then broke down and he was forced to lease another vehicle. Tyree emphasizes that "GCA would not help [him] with getting an apartment," and instead gave him $400.00 to use towards the deposit for a room in a boardinghouse. Id. at 20.

Tyree claims that GCA used this as a tactic to force him to quit, and that he had no choice but to resign from the company in April of 2016.

Approximately three months later, Tyree reapplied to work for GCA. Tyree was informed that his application was denied due to his criminal background. Id. at 5. Tyree emphasizes that he was convicted of a drug offense more than seven years ago, and that he therefore had the same criminal record when he was first hired to work for the company. Tyree cites to the Equal Employment Opportunity Commission's ("EEOC") guidance concerning the use of criminal records in the employment context, which indicates that an employer's neutral policy on criminal conduct "may disproportionately impact some individuals protected under Title VII, and may violate the law if not job related and consistent with business necessity (disparate impact liability)." Id. at 6 (quoting EEOC Enforcement Guidance No. 915.002, Consideration of Arrest and Conviction Records in Employment Decisions Under Title VII of the Civil Rights Act of 1964, available at https://www.eeoc.gov/laws/guidance/arrest_conviction.cfm).

Tyree indicates that he filed a charge of discrimination with the EEOC on October 5, 2016. Id. at 2. On April 18, 2017, the EEOC dismissed the charge and notified Tyree of his right to sue. Id. at 3.

Tyree filed the instant action against GCA on July 14, 2017. On October 23, 2017, Tyree filed an amended complaint. In the amended complaint, Tyree indicates that he is asserting the following claims:

    A) Discrimination Based on My Criminal Background

    B) Negligent Hiring Practices

    C) Fraudulent Misrepresentation[s]

    D) Retaliation in the Workplace

E) Intentional Infliction of Emotional Distress

Am. Compl. 5.

On November 3, 2017, GCA moved to dismiss the amended complaint. The court notified Tyree of the defendant's motion, as required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), and gave him 21 days in which to file a response. As of this date, no response has been filed. The matter is now ripe for disposition.

**Standards of Review**

Rule 12(b)(1) of the Federal Rules of Civil Procedure permits a party to move for dismissal of an action for lack of subject matter jurisdiction. The plaintiff bears the burden of proving that subject matter jurisdiction exists. Evans v. B. F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999). Dismissal for lack of subject matter jurisdiction is appropriate "if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Id. (internal citation and quotation marks omitted).

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. To survive dismissal for failure to state a claim, a plaintiff must establish "facial plausibility" by pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "At bottom, a plaintiff must 'nudge [his] claims across the line from conceivable to plausible' to resist dismissal." Wag More Dogs, LLC v. Cozart, 680 F.3d 359, 364-65 (4th Cir. 2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). While a pro se litigant's pleadings are liberally construed, Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978), a pro se complaint must still contain sufficient facts

"to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 555, 570.

## Discussion

### I. Discrimination claim under Title VII

Tyree first claims that GCA violated Title VII by engaging in "employment discrimination based on his criminal background." Compl. 28. For the following reasons, the court concludes that this claim is subject to dismissal under Rule 12(b)(6).

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to [the] . . . terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Title VII also makes it unlawful for an employer "to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin." Id. § 2000e-2(a)(2). "These two proscriptions, often referred to as the 'disparate treatment' or ('intentional discrimination') provision and the 'disparate impact' provision, are the only causes of action [for discrimination] under Title VII." EEOC v. Abercombie & Fitch Stores, Inc., 135 S. Ct. 2028, 2032 (2015).

To the extent Tyree intends to assert a disparate treatment claim, his amended complaint fails to state a claim upon which relief may be granted. Individuals with a criminal record are not a protected class under Title VII. See Manley v. Invesco, 555 F. App'x 344, 348 (5th Cir. 2014); see also Wright v. Pittsylvania Cty. Sch., No. 4:16-cv-00029, 2016 U.S. Dist. LEXIS 177115, at *6 (W.D. Va. Dec. 22, 2016) (Kiser, J.) (explaining that individuals with arrest records are not a protected class). Thus, the fact that GCA may have elected not to rehire Tyree due to his criminal

5

record, standing alone, does not implicate § 2000e-2(a)(1). In the absence of any plausible assertion that GCA failed to rehire him because of his race or some other protected characteristic, the court concludes that the amended complaint fails to state a disparate treatment claim under Title VII.

The amended complaint also fails to state a disparate impact claim against GCA. To support such claim, Tyree merely points to the EEOC's guidance concerning the use of criminal records in the employment context, which indicates that an employer's neutral policy on criminal conduct may have a disparate impact on a protected class. Am. Compl. at 6. However, the United States Court of Appeals for the Fourth Circuit has made clear that "'a sheer possibility that a defendant has acted unlawfully'" is insufficient to meet the plausibility standard set forth in Twombly and Iqbal. McCleary-Evans v. Md. Dep't of Transp., 780 F.3d 582, 588 (4th Cir. 2015) (quoting Iqbal, 556 U.S. at 678). To withstand review under Rule 12(b)(6), a disparate impact claim must be supported by allegations tending to show that the practice or policy at issue caused a statistically significant disparity between members of the protected class and other employees or individuals. Adams v. City of Indianapolis, 742 F.3d 720, 733 (7th Cir. 2014); see also Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 265 (4th Cir. 2005) ("To establish a prima facie case of disparate impact discrimination under Title VII, a plaintiff must show that the facially neutral employment practice had a significantly discriminatory impact.") (citation and internal quotation marks omitted).

In this case, Tyree does not assert any facts that would support the conclusion that African-Americans or any other protected class were disproportionately impacted by GCA's consideration of an applicant's criminal history. Indeed, Tyree does not mention any other members of any protected group who were turned down for a job on the basis of their criminal

6

record. Appellate courts, including the Fourth Circuit, have made clear that "[t]he policy or practice contemplated by the disparate impact doctrine consists of more than the mere occurrence of isolated or . . . sporadic discriminatory acts." Wright v. Nat'l Archives & Records Serv., 609 F.2d 702, 711 (4th Cir. 1979); see also Reidt v. Cty. of Trempealeau, 975 F.2d 1336, 1341 (7th Cir. 1992) ("'Discriminatory impact cannot be established where you have just one isolated decision.'") (quoting Coe v. Yellow Freight Sys., Inc., 646 F.2d 444, 451 (10th Cir. 1981)). In the absence of any facts which plausibly suggest that GCA's selection criteria imposed a substantially disproportionate burden upon African-Americans or another protected class, the court concludes that Tyree's disparate impact claim is subject to dismissal.

## II. Retaliation claim under Title VII

In addition to prohibiting discrimination, Title VII makes it unlawful for an employer to retaliate against an employee for engaging in conduct protected by the statute. See 42 U.S.C. § 2000e-3(a). GCA has moved to dismiss Tyree's retaliation claim for failure to exhaust his administrative remedies. GCA contends that Tyree's EEOC charge did not provide notice that he intended to bring a retaliation claim.

The failure of a plaintiff to exhaust his administrative remedies with the EEOC deprives the federal courts of subject matter jurisdiction over a Title VII claim. Jones v. Calvert Grp., Ltd., 551 F.3d 297, 300 (4th Cir. 2009). "The scope of the plaintiff's right to file a federal lawsuit is determined by the charge's content." Id. "Only those discrimination clams stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996).

7

In this case, GCA maintains that Tyree's EEOC charge referred solely to purported race discrimination and did not include any allegations of retaliation. Tyree has not refuted this assertion or otherwise shown that he alleged facts that would have put GCA or the EEOC on notice that he was charging GCA with retaliation. See, e.g., Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 133 (4th Cir. 2002) (holding that the plaintiff's claim for retaliation was barred where the plaintiff's EEOC charge only alleged that the defendant discriminated against him on the basis of his race). Accordingly, Tyree has not met his burden of proving that this court has subject matter jurisdiction over his retaliation claim.* For this reason, the claim is subject to dismissal under Rule 12(b)(1).

### III. Remaining claims under state law

In addition to his claims under Title VII, Tyree attempts to assert a number of claims under state law. For the following reasons, the court concludes that each of these claims is subject to dismissal.

#### A. Negligent hiring

To the extent Tyree seeks to recover damages for "negligent hiring practices," the amended complaint reflects a misunderstanding of the applicable law. In Virginia, a cause of action for negligent hiring "is based on the principle that one who conducts an activity through employees is subject to liability for harm resulting from the employer's conduct if the employer is negligent in the hiring of an improper person in work involving an unreasonable risk of harm to others." S.E.

---

* The court notes that the Fourth Circuit has recognized an exception to the exhaustion requirement for certain retaliation claims. Specifically, a plaintiff may raise for the first time in federal court the claim that his employer retaliated against him for filing an EEOC charge. Nealon v. Stone, 958 F.2d 584, 590 (4th Cir. 1992). That exception does not apply in this case, since the alleged retaliation occurred before Tyree filed a charge of discrimination with the EEOC. See Ackerson v. Rector & Visitors of the Univ. of Va., No. 3:17cv00011, 2017 U.S. Dist. LEXIS 184946, at *5 (W.D. Va. Nov. 7, 2017) (Conrad, J.) (observing that the Nealon exception "does not apply in cases in which a plaintiff could have alleged retaliation in the initial charge to the EEOC, but did not do so").

Apts. Mgmt., Inc. v. Jackman, 513 S.E.2d 395, 397 (Va. 1999). "Liability is predicated on the negligence of an employer in placing a person with known propensities, or propensities which should have been discovered by reasonable investigation, in an employment position in which, because of the circumstances of the employment, it should have been foreseeable that the hired individual posed a threat of injury to others." Id. (internal citation and quotation marks omitted).

In this case, Tyree does not allege that he suffered any injury as a result of the negligent hiring of another individual. Instead, Tyree suggests that GCA acted negligently in hiring him to work for the company in 2014, even though he had a felony conviction. See Am. Compl. at 9 ("Plaintiff admits that he was convicted of drug distribution, a crime of moral turpitude, several years ago. Nevertheless, he was hired by GCA Services with blatant disregard for Virginia Code § 22.1-296.1[, which requires that every applicant for employment at a public school certify that the applicant has not been convicted of a felony.]"). The court agrees with GCA that Tyree's allegations in this regard fail to state a claim for negligent hiring. Accordingly, this claim is subject to dismissal under Rule 12(b)(6).

### B.  Fraudulent misrepresentations

The court likewise concludes that the amended complaint fails to state a claim for fraud under Virginia law. Tyree's fraud claims stem from assurances that were allegedly made during his initial interview and when he agreed to relocate to Chesterfield. Tyree alleges that he accepted the job after being promised that he would quickly advance in the company and make $13.00 per hour within three months. Tyree further alleges that he relocated the Chesterfield after being assured that he would be made an account manager, or transferred to Florida, if he succeeded in improving the cleanliness of a particular high school. The amended complaint appears to

9

indicate that the company did not keep these alleged promises regarding future employment opportunities.

The "general rule" in Virginia is that "fraud must relate to a present or pre-existing fact, and cannot ordinarily be predicated on unfulfilled promises or statements as to future events.'" Patrick v. Summers, 369 S.E.2d 162, 164 (Va. 1988) (quoting Soble v. Herman, 9 S.E.2d 459, 464 (Va. 1940)). Although an exception applies when a promise is made without any intention of performing it, Id., the amended complaint does not include any allegations regarding GCA's intentions at the time of the promises at issue. The court therefore concludes that the claim for fraudulent misrepresentations is subject to dismissal under Rule 12(b)(6).

### C. Intentional infliction of emotional distress

Tyree's final claim is one for intentional infliction of emotional distress. Such claims are disfavored under Virginia law and require proof of the following elements by clear and convincing evidence: (1) that "the wrongdoer's conduct was intentional or reckless"; (2) that "the conduct was outrageous or intolerable"; (3) that "there was a causal connection between the wrongdoer's conduct and the resulting emotional distress"; and (4) that "the resulting emotional distress was severe." Supervalu, Inc. v. Johnson, 666 S.E.2d 335, 340 (Va. 2008).

Upon review of the amended complaint, the court concludes that Tyree's allegations are insufficient to satisfy the foregoing elements. Succinctly stated, the amended complaint does not describe the type of outrageous or intolerable conduct required to state a claim for intentional infliction of emotional distress. Nor does it plausibly suggest that Tyree suffered the degree of emotional distress required under existing precedent. The Supreme Court of Virginia has emphasized that "liability arises only when the emotional distress is extreme, and only where the distress inflicted is so severe that no reasonable person could be expected to endure it.'" Russo v.

White, 400 S.E.2d 160, 163 (Va. 1991). The symptoms described in the amended complaint simply do not rise to that level. See Harris v. Kreutzer, 624 S.E.2d 24, 34 (Va. 2006) (holding that the plaintiff's allegations of "severe psychological trauma and mental anguish affecting her mental and physical well-being," with symptoms including "nightmares, difficulty sleeping, extreme loss of self-esteem and depression, requiring additional psychological treatment and counseling," failed to describe the "type of extreme emotional distress that is so severe that no reasonable person could be expected to endure it") (citing Russo, 400 S.E.2d at 163). Accordingly, GCA's motion will be granted will respect to this claim.

## Conclusion

For the reasons stated, the court will grant GCA's motion to dismiss. The Clerk is directed to send copies of this memorandum opinion and the accompanying order to the plaintiff and all counsel of record.

DATED: This 9th day of January, 2018.

_____
Senior United States District Judge